IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROBERT G. WING, as Receiver for VESCOR CAPITAL CORP., a Nevada corporation, et al.,<br><br>Plaintiff,<br><br>vs.<br><br>BERNARD C. BUCHANAN, et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br><br><br>Case No. 2:08-cv-803<br>Judge Dee Benson |

   This matter is before the Court on Plaintiff's Motion for Summary Judgment. (Dkt. No. 15.) On August 30, 2011, the Court heard oral argument on the matter and at the conclusion of the hearing provided the parties with additional time to provide supplemental briefing on the motion. On March 6, 2012, the Court heard oral argument on the supplemental briefing. M. David Eckersley and Jared N. Parrish appeared on behalf of the Receiver and Clifford V. Dunn appeared on behalf of the Defendants. Now, having fully considered the parties' written and oral arguments, the Court enters the following Memorandum Decision and Order.

1

**BACKGROUND**

This action is one of many arising from the collapse of an alleged Ponzi scheme orchestrated and run by Val Southwick through a complex web of over 150 corporations and limited liability companies collectively referred to as VesCor. On February 6, 2008, the United States Securities and Exchange Commission ("SEC") filed suit against Southwick and VesCor, alleging violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. On May 5, 2008, the Court appointed Robert G. Wing as Receiver for the VesCor affiliated business entities.

The Receiver then proceeded to file numerous ancillary actions in an attempt to recover the "fraudulent transfers" caused by Southwick. In this particular case, the Receiver filed the underlying ancillary action against the Defendants herein on October 16, 2008. The Receiver asserts that Bernard C. Buchanan, personally and through the companies he controlled, "invested millions of dollars with VesCor and received payments of money and other assets which exceeded the amounts they invested." (Dkt. No. 2, Complaint at ¶ 1.) According to the Receiver, because the payments were made as part of a Ponzi scheme, the transfers were by definition, made to hinder, delay or defraud creditors and/or investors of VesCor. (Id. ¶ 32.) On February 5, 2010, the Receiver filed the instant motion for summary judgment.

**DISCUSSION**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also

Utah R. Civ. P. 56(c). "A 'material fact' is one 'that might affect the outcome of the suit under the governing law, and a 'genuine' issue is one for which 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Pelt v. Utah, 539 F.3d 1271, 1280 (10th Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)) (internal citation omitted).

The Receiver's theory of fraudulent transfer relies on the Ponzi scheme doctrine to establish that the monies VesCor paid to the Defendants were fraudulent transfers. See Scholes v. Lehmann, 56 F.3d 750 (7th Cir. 1995). "Under the UFTA, a debtor's actual intent to hinder, delay, or defraud is conclusively established by proving that the debtor operated as a Ponzi scheme." Warfield v. Carnie, No. 3:04-cv-0633, 2007 WL 1112591 *2 (N.D. Tex. Apr. 13, 2007); Donell v. Kowell, 533 F.3d 762, 770 (9th Cir. 2008) ("The mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud.") (quoting In re AFI Holding, Inc., 525 F.3d 700, 703 (9th Cir. 2008)); In re Indep. Clearing House, 77 B.R. 843, 860 (D. Utah 1987) ("One can infer an intent to defraud future undertakers from the mere fact that a debtor was running a Ponzi scheme. Indeed, no other reasonable inference is possible."). To invoke the Ponzi scheme doctrine, the Receiver has endeavored to prove that VesCor operated as a Ponzi scheme. As evidence the Receiver relies on a forensic accounting of VesCor's financial and business records, and testimony of VesCor employees and insiders. The sum of this information caused the Receiver's expert, Gil Miller, to conclude that beginning in 2000 VesCor "exhibited characteristics of a Ponzi scheme." (Third Decl. of Gil A. Miller ¶ 8.)

The Receiver's evidence on the issue of whether VesCor was a Ponzi scheme has not

been rebutted by any credible evidence presented by the Defendants. Given the Receiver's unchallenged evidence, the Court concludes that there is not a genuine issue of fact whether VesCor operated as a Ponzi scheme. See Wing v. Dockstader, Slip Copy, 2010 WL 5020959 (D. Utah Dec. 3, 2010); Wing v. Holder, Slip Copy, 2010 WL 5021087 (D. Utah Dec. 3, 2010) ("[T]he Receiver's unchallenged evidence that VesCor operated as a Ponzi scheme adequately establishes that VesCor transferred the referral fees and investment returns to the defendants with the intent to defraud the investors.").

The Court also finds that there is no material issue of fact concerning the amounts invested and received by the Buchanan entities. The only disputed issue of fact in this regard concerned a $1.7 million dollar investment Mr. Buchanan claimed he made prior to 2000. The Receiver originally disputed this amount, and claimed there was no evidence to support the Defendants' investment. However, in the supplemental briefing on this matter and then again at oral argument, the Receiver agreed to give the Defendants credit for the $1.7 million dollar investment. Accordingly, and in light of the Receiver's willingness to "waive" or "give credit" for the $1.7 investment, the Court finds there no longer remains any issue of fact with regard to the Defendants' investments and disbursements, and the Court grants the Receiver's motion for summary judgment in the amount of $4,581,047.

Finally, the Court declines to treat the Defendants as separate entities for purposes of liability to the Receiver. The Court agrees with the Receiver and finds that the investments made by Mr. Buchanan and his various business entities were not kept separate by Mr. Buchanan. Similarly, payments to the Buchanan entities were not always made to the entities

which made the original investments. Mr. Buchanan's commingling of his own investments and receipts makes it impossible for the Court to discern any separate character of the investments and payments. Therefore, the Court declines to treat Mr. Buchanan and his various businesses as separate entities.

## CONCLUSION

Accordingly, and for the reasons set forth above, the Court GRANTS Plaintiff's Motion for Summary Judgment in the amount of $4,581,047, plus prejudgment interest.

Dated this 7th day of March, 2012.

_____
Judge Dee Benson
United States District Court