IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROBERT G. WING, as Receiver for VESCOR CAPITAL CORP., et al., <br><br> Plaintiff, <br><br><br> vs. <br><br><br> BERNARD C. BUCHANAN, et al., <br><br> Defendants. | MEMORANDUM DECISION AND ORDER <br><br><br><br><br> Case No. 2:08-CV-803 <br><br> Judge Dee Benson |

Before the court are Plaintiff's Second Motion for Summary Judgment and Plaintiff's Motion to Exclude the Testimony of Mr. Kelly Johnson.

PROCEDURAL HISTORY

On March 7, 2012, this court granted plaintiff's (hereinafter "the Receiver") first motion for summary judgment. (Dkt. No. 34.) That ruling was appealed to the United States Court of Appeals for the Tenth Circuit. The Tenth Circuit vacated the summary judgment order on statute of limitations grounds, finding issues of fact regarding when the one-year tolling provision in the fraudulent transfer statute of limitations began to run. Accordingly, the circuit court remanded for further proceedings. (Dkt. No. 130.)

1

In the present motion for summary judgment, plaintiff takes the position that the court does not need to deal with the statute of limitations issue addressed by the Tenth Circuit because plaintiff has chosen to disregard any reliance on the one-year discovery provision and proceed solely pursuant to the four year statute of limitations under Utah Code Annotated § 25-6-10.

The Receiver asserts that having abandoned altogether the one-year discovery rule of the Uniform Fraudulent Transfer Act, his Complaint is unquestionably timely and entitles the Receiver to judgment against the defendants in an amount that is the lesser of (1) the defendants' total "winnings" or (2) the amount received by the defendants during the four years prior to the filing of the Complaint. Plaintiff primarily relies on a Ninth Circuit Court of Appeals case, Donell v. Kowell, 533 F.3d 762 (9th Cir. 2008), in support of this new damages model. Plaintiff further points out that defendant Buchanan previously agreed that the transfers made to Buchanan during the four-year period between October 16, 2004 and October 16, 2008, the date the Complaint was filed, equaled $14,135,106.00. Plaintiff also asserts as undisputed that Buchanan received total "winnings" of $6,278,070 from VesCor, which is less than $14,135,106.00. Plaintiff therefore seeks summary judgment in the amount of $6,278,070, plus prejudgment interest, for a total of $8,311,217.00.

The other issues raised in this second motion for summary judgment are identical to those raised in the previous motion for summary judgment. They include whether there are genuine issues of material fact regarding whether the VesCor companies were operating as a Ponzi scheme and whether it is appropriate to find joint and several liability against the various Buchanan entities as a matter of law. Also, the Receiver has moved that Mr. Kelly Johnson's

proposed expert testimony be formally declared inadmissible under Rule 702 of the Federal Rules of Evidence.

## FACTUAL BACKGROUND

In 1991 Mr. Val Southwick began operating a real estate investment business that eventually collapsed in 2006 when it became obvious the company could no longer make payments to its investors. During its history, Southwick caused the formation of some 150 separate corporate entities to manage the affairs of his business. By the time of its and his downfall in the fall of 2006, according to the conclusion reached by Mr. Gil Miller, the forensic accounting expert retained by the Receiver to conduct an investigation of the business, the entire empire, referred to collectively as VesCor, had liabilities of more than $255 million and assets of only approximately $185 million. (Miller Decl. at 13.) It was also revealed, according to the same report, that during its existence VesCor had demonstrated all of the essential characteristics of a Ponzi scheme. It did not at any time generate sufficient income from its real estate operations to cover operating expenses. It was consistently insolvent, with operating losses and negative operating cash flows in every year of its existence. It remained in business only on the basis of receiving new investor money in order to pay old investors and meet enough of its other obligations to appear viable. Southwick paid himself a large salary – for example, more than $9 million in cash in the period from 2000 to 2006 – and spent some $1.8 million dollars of VesCor money to purchase luxury automobiles. VesCor never generated profits. Working through his ever-more-complex and growing network of companies, Southwick repeatedly lied to investors, promising first-position trust deeds that were never recorded and consistently mischaracterizing

the nature of, and risks associated with, the business. In financial statements he consistently overstated investment returns and understated losses. According to Mr. Miller's report, the losses were never fully disclosed to investors, or anyone else. VesCor never at any time made enough money to pay its expenses. Its only lifeline was money from new investors. Despite the labyrinth of corporate entities he created, Southwick always operated VesCor as one big project, completely under his control, with its assets commingled and with Southwick operating the business as one big cash-based empire, freely using any available account that actually had money to pay whatever debts or obligations were in another account or to a creditor, no matter how unrelated.

After the collapse of VesCor in 2006, Val Southwick was charged with fraud by the State of Utah and reached a plea deal. He was sentenced to serve the maximum term allowed, nine consecutive 1 to 15 year prison terms. He is presently incarcerated at the Utah State Prison. On February 6, 2008, the United States Securities and Exchange Commission filed a civil action against Southwick and VesCor, <u>Securities and Exchange Commission v. VesCor Capital Corp. et al.</u>, Case No. 1:08-CV-12 DB, and requested that a receiver be appointed to marshal VesCor's assets for the purpose of returning as much restitution as possible to the approximately 800 investors who lost more than $140 million. The motion was granted by this court, pursuant to its equity powers, in May 2008, and the Receiver, plaintiff in this action, was appointed. Thereafter, the Receiver brought numerous fraudulent transfer lawsuits against various companies and individuals, including the Buchanan defendants in this action, seeking the return of fraudulent transfers pursuant to the Utah Uniform Fraudulent Transfer Act. The defendants in these various

fraudulent transfer actions fall generally into two categories: (1) non-investors who received transfers from VesCor, such as real estate companies and lawyers, and (2) investors who made money from their VesCor investments, the so-called "winners." The Buchanan defendants fall into the latter category.

## DISCUSSION

Statute of Limitations.

As mentioned above, on remand, the Receiver has elected to rely solely on the four-year limitations period under the Utah Uniform Fraudulent Transfer Act. The Receiver claims this eliminates any discussion of the one-year provision that allows a filing beyond four years if the claimant can demonstrate that the action was commenced within one year after the allegedly fraudulent transfer was or reasonably could have been discovered. Utah Code Ann. § 25-6-10.

Having elected to forgo any effort to qualify for the one-year protection, the Receiver asserts that its damages should be calculated as the lesser of (1) the investor's total winnings or (2) the amounts transferred to the investor from VesCor in the four years immediately preceding the date the Complaint was filed. Here, the Receiver claims Buchanan's total winnings equal approximately $6 million and that it is undisputed that Buchanan received approximately $14 million in the four years prior to the commencement of this action. Therefore, the Receiver claims he is entitled to an award of $6,278,070.00, plus prejudgment interest. In Donnell v. Kowell, the United States Court of Appeals for the Ninth Circuit applied this type of formula in calculating damages. 533 F.3d 762 (9th Cir. 2008). There appears to be no decision addressing the issue in the Tenth Circuit.

This court agrees with the reasoning and holding in Kowell.  Throughout the numerous fraudulent transfer cases that have been presented to the court during its supervision of the VesCor Receiver, this court has employed the same general approach regarding the amounts winning investors should be obligated to return to the Receiver in order to achieve a proper and equitable distribution of VesCor assets to losing investors.  Those VesCor investors who received back more money than they invested have consistently been required to return to the Receiver the amounts they received from VesCor that exceeded their investments, plus any commissions they received for finding new investors.  See, e.g., Wing v. Dockstader, 2010 WL 5020959 (D. Utah Dec. 3, 2010); Wing v. Holder, 2010 WL 5021087 (D. Utah Dec. 3, 2010).
The approach taken in Kowell and that proposed by the Receiver is consistent with such a formula.  It is also in harmony with Scholes v. Lehman, 56 F.3d 750 (7th Cir. 1993), and other cases which this court has previously relied upon in dealing with VesCor.

In his opposition brief, Buchanan has not chosen to attempt to rebut the Receiver's argument based on Kowell or otherwise address Kowell in any respect.  Nor has he cited any case law or other authority that would suggest Kowell's approach is improper.  Buchanan does assert that he should owe nothing under the proposed approach because the amount of his total investment (approximately $20 million), which dates back to 1996, exceeds the approximate $14 million he was paid by VesCor during the four year period immediately preceding the filing of the Complaint in this case.  Kowell rejected such an argument, and so does this court, finding, as did the Ninth Circuit, that such an approach would be "unmanageable in practice" and inequitable.  Kowell, 533 F.3d at 774.  The Buchanan defendants, like other winners, should be required to

return their winnings to the Receiver for equitable distribution to all investors.

> Ponzi Scheme Evidence and The Receiver's Motion to Exclude Testimony of Mr. Johnson.

The Receiver claims he is entitled to summary judgment because his expert's opinion that VesCor operated with all of the characteristics of a Ponzi scheme is based on solid principles and methods and there are insufficient facts presented by defendants to the contrary to constitute a genuine issue of material fact. As a result, the Receiver claims he is entitled to a presumption that the transfers to the Buchanan defendants were fraudulent and therefore prevails because under such circumstances where can be no reasonable value shown for the transfers and a finding of fraudulent transfer follows as a matter of law. In response, Buchanan claims VesCor was not always a Ponzi scheme, and relies principally on the opinion of Mr. Kelly Johnson, his proposed expert. As noted earlier, the arguments advanced by the Buchanan defendants, including those based on the opinions of Mr. Johnson, are precisely the same arguments that were presented in the first motion for summary judgment, which the court heard and granted in 2012. The only difference now is that the Receiver has also filed a separate motion seeking to exclude the testimony of Mr. Johnson pursuant to Rule 702 of the Federal Rules of Evidence and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993).

Finding the landscape unchanged from the earlier motion, the court reaches the same conclusion and finds, as it did then, that the defendants have failed to present sufficient evidence to create a genuine issue of material fact as to which a jury could reasonably find that VesCor was not operating as a Ponzi scheme.

Regarding Mr. Johnson's proposed expert report, it should be noted that Mr. Johnson's

report was first presented to the court in an earlier case, Wing v. Hammonds, in connection with the Receiver's motion for summary judgment on the same grounds as in this case. See Wing v. Hammons, Case No. 2:08-CV-620 DB. The court's view in both cases is the same: that Mr. Johnson's methods, principles and conclusions are unsupported by sufficient facts or data and are not based on reliable accounting methods or principles sufficient to overcome the Receiver's evidence that VesCor was a Ponzi scheme. The court found then, and finds now, that even if a jury were to hear Mr. Johnson's testimony it would not have a sufficient basis upon which it could reasonably find that VesCor was not operating at all pertinent times as a Ponzi scheme.

As the Receiver points out in his briefs, in these earlier cases the court was focused on whether in any of the fraudulent transfer cases the defendants would present an admissible expert opinion to counter Mr. Miller's report and opinion. For example, during the hearing in the earlier motion in this case, the court addressed the subject as follows:

> The Court: The one thing I expected to see somewhere along the line or thought I might see was a forensic accountant, which you just described Mr. Johnson as, who did the same thing as Mr. Miller did and undertook an investigation of these records that are available and came to me in a declaration with an opposite point of view. That I have not seen. Nor have I seen it from Mr. Johnson.
>
> Buchanan's Counsel: I don't think I have that person. I don't think I have a person that can come in and say it was not a Ponzi scheme.

(Hearing, August 30, 2011.)

Now, however, even though there has been no change to Mr. Johnson's report or testimony, it is being offered, it seems, as precisely what it was considered not to be, at least by counsel, two years ago.

In addition to seeking an award of summary judgment on the ground that there is no genuine issue of material fact even with Mr. Johnson's proposed testimony, the Receiver has added a formal motion to exclude Mr. Johnson's testimony pursuant to Rule 702. The court, for the same reasons expressed earlier, finds Mr. Johnson's testimony to be unsupported by reliable principles and methods and that the methods he employs are not reliably applied to the facts of this case. Accordingly, his report and testimony are inadmissible as evidence.

Mr. Johnson clearly wants to disagree with Mr. Miller but he never quite explains why, at least not with sufficient facts, data and analysis to qualify under Rule 702. He candidly admits that VesCor possessed all of the Ponzi scheme characteristics identified by Mr. Miller, but then simply says he doesn't agree. He also admits and appears to mostly agree with Mr. Miller's finding that VesCor was insolvent, that it paid off old investors almost exclusively with new investor money, that it did not generate profits, that misrepresentations were frequent, that investors were repeatedly misled by Southwick about the security of their investments and the general health of the business, and that Southwick paid himself a generous salary and bought expensive cars for himself while the enterprise was badly losing money, yet he offers nothing of substance to contradict this long list of ponzi-like characteristics.

Mr. Johnson does provide evidence, and bases his opinion largely upon it, that VesCor had an office building, employees and actual real estate projects, but even there he fails to identify any of these projects as generating anything close to sufficient revenue to pay obligations to investors. Furthermore, it is not uncommon for a Ponzi scheme to have some actual business operations.

9

Furthermore, there is nothing in Mr. Johnson's report that attempts to evaluate the profitability of VesCor's projects in support of his opinions. Accordingly, the court finds that Mr. Johnson did not identify sufficient data to support his opinions, did not in any event engage in a proper analysis, and did not apply reliable principles to support his opinions. See <u>Lippe v. Bairnco Corp.</u>, 288 B.R. 678, 686 (S.D.N.Y. 2003).

Mr. Johnson opines that VesCor was a viable company, but here again, he fails to review sufficient data, or present, in most instances, any data at all, to justify his opinion. He presents no scenario in which VesCor operated as a viable company rather than as a Ponzi scheme. As the Receiver points out, Mr. Johnson "cannot identify value that was ever created from any of VesCor's projects, which in his opinion is the measure of viability. This demonstrates that he has not reliably applied principles and methods to the facts of this case." (Dkt. No. 133, Receiver's Mem. In Support of Mot. to Exclude Johnson Opinions & Testimony at 12.)

Furthermore, Mr. Johnson admitted in his deposition that "it makes sense to perhaps do some additional analysis." (Johnson Depo., at pp. 75-76.) However, no such additional analysis has been attempted.

For these reasons, and those advanced in the Receiver's brief, the court in its discretion finds that Mr. Johnson's testimony is inadmissible under FRE 702 and <u>Daubert</u>.

<u>Joint and Several Liability</u>

In seeking joint and several liability against the Buchanan defendants, the Receiver presents essentially the same arguments and facts that he presented in the previous summary judgment motion. Buchanan's opposition is also similar to the position taken in the earlier

briefing. For the same reasons the court found the Receiver's position valid then it reaches the same conclusion today. The facts demonstrate a commingling by Mr. Buchanan of his investments by and among himself, his family and the various entities he controlled to such an extent that it remains virtually "impossible for the court to discern any separate character of the investments and payments." Wing v. Buchanan, 2012 WL 775688 at *2 (Reply Br. at 47).

The record shows, without any serious rebuttal, that although Mr. Buchanan used different companies at different times for both making investments and receiving returns on them, in doing so he failed to observe any meaningful distinction between the companies or himself. Nor did Mr. Buchanan manage the accounts in a way that observed any separation. Several examples of this type of commingling are listed in the Receiver's opening brief at pages 19 through 21. Together, they show a lack of separation and a unity of interest, all controlled by Mr. Buchanan, that makes joint and several liability the appropriate remedy.

## CONCLUSION

For the foregoing reasons, the court GRANTS plaintiff's motion to exclude the testimony of Kelly Johnson and GRANTS plaintiff's motion for summary judgment, awarding the amount of $6,278,070.00 plus $2,033,147.00 in prejudgment interest, for a total of $8,311,217.00 against the defendants jointly and severally.

DATED this 18th day of April, 2014.

_____
Dee Benson
United States District Judge